## CHARLES HECHT, Appellant, v. JOSEPH METZLER, Respondent.

### Vendor and Purchaser—Fraud—Damages—Evidence.

1. Appellant, owning land in Colorado, which had been examined by respondent, entered into a written contract with respondent to exchange the Colorado land, at a price named in the contract, for Ogden land, which respondent represented to be of a certain value, yielding certain fixed rentals, and located high and dry, in a specified locality. Appellant had not examined all the Ogden land, and the price of it was not stated in the contract of sale, but was in the deed. The Ogden property was not as represented, did not yield one-half the rent as represented, and was not worth one-third of the price represented. On the trial of the action brought by appellant to recover damages for fraud and deceit on the part of respondent in procuring the exchange, and where the respondent alleged no fraud on the part of appellant, the respondent, by his attorney, in his opening statement to the jury, under an offer incorporated in the answer, was allowed, under objection, to state to the jury that respondent offered then and there to sell and convey the Colorado property back to appellant for the sum of $15,000, whereas appellant was claiming damages at $85,000, and in open court tendered a deed for the sum from respondent's grantee on payment of $15,000, and offered to give time on stated payments. *Held*, that the court erred in allowing the offer to stand; that this was not a method recognized by' law for proving value. The right of damages in such a case is absolute upon the happening of the wrong, and nothing but the act of the injured party could release it. The offer made doubtless operated to the disadvantage of the appellant. *Held*, further, that under the pleadings the value of the Colorado property, concerning which no fraud or deceit is alleged, was not in issue, so far as affecting the question of damages; that the appellant was entitled to the benefit of his bargain, and it was not for the jury to fix a new price on the appellant's

land, when the same had already, without deception, been fixed by the parties.

2. An expression of opinion, estimate, or judgment of the value of property, even if false, does not ordinarily constitute actionable fraud. But a willful misrepresentation by a vendor affirming that the rental from property exchanged was greater than it was, when relied upon by the vendee, is an actionable fraud.

3. So a willful representation by an owner, in the exchange of real estate, that the property exchanged was high and dry, and located in a particular place, which representation was relied upon by the purchaser as true without inspection of the premises, but which was false, and which operated to the purchaser's injury, is an actionable fraud.

4. Where the court instructed the jury that there was no evidence in the case as to what appellant did pay for the land in question, and that he was only entitled to recover what he paid, and further instructed the jury to disregard the testimony of appellant with reference to respondent's representations as to the rentals of certain pieces of land taken in exchange by appellant, which had a tendency to affect the value of the land, whereas the written contract and testimony did show that the price paid by appellant for such property was 3,250 acres of land at an agreed price of $30 per acre, *held,* that the instruction was erroneous, and that the proper measure of damages in such a case is the difference between the actual value of the land purchased by appellant as it would have been if as represented and as it actually was.

(No. 695. Decided March 6, 1897.)

Appeal from the Fourth district court, Territory of Utah. Hon. H. W. Smith, *Judge.*

Action by Charles Hecht against Joseph Metzler for tort committed in the fraudulent misrepresentation of land and its rental value. From a judgment for defendant, plaintiff appeals. *Reversed.*

*Maginnis & Weber,* and *J. N. Kimball* for appellant.

*E. M. Allison* and *Evans & Rogers,* for respondent.

No briefs were filed.

MINER, J.:

On August 1, 1893, at Denver, Colo., appellant and respondent exchanged real estate by written contract, which was afterwards executed by interchange of deeds of conveyance. By the terms of the written contract, appellant agreed to exchange 3,250 acres of land in Colorado, at a stipulated price of $30 per acre, and some personal property, for four pieces of property belonging to respondent in Ogden, Utah. The price of the Ogden property was not fixed in the contract, but was fixed in the deeds of conveyance. Plaintiff alleged in his complaint that the price of each piece of Ogden property was fixed and represented by the defendant at the following stated sums in the negotiations which culminated in the written contract: One piece of the Ogden property consisted of residence property on the corner of Washington avenue and Twenty-first street, valued at $10,000, and represented by the defendant to be renting at $240 per year. The second piece was business property on the corner of Twenty-third street and Washington avenue, of the value of $60,000, and was represented by the defendant to be producing a rental of $4,000 a year. The third piece consisted of a vacant lot on Twenty-Eighth street and Washington avenue valued at $16,000. The fourth piece consisted of a number of lots and a piece of unplatted ground in South Ogden, known as "Central Park Annex to the City of Ogden," valued at $33,000, and represented by the defendant to be sufficient to cut into 100 full-sized building lots, and situated southeast of the Pingree Avenue school-house, and that they were high, dry, and smooth, were full lots, accessible to the streets,

and with buildings built up around them. Plaintiff alleges that the representations as to the value, location, and rental of said lots were false, and known to be false by the defendant, and that the lots conveyed were not the lots sold, and that he relied upon the representations as being true, and made the exchange in reliance thereon. Plaintiff also claims that the defendant went over and examined the Colorado property, but that he (the plaintiff) never examined the Ogden property with a view of purchasing it; that he saw the first three descriptions named, but was not shown the lots in question, and had no information as to the rental of the improved property, except what he obtained from the defendant, as aforesaid, before the contract was made. The answer denied the allegations in the complaint; alleged that the Colorado property was not worth to exceed $15,000, and offered to reconvey and deliver the whole thereof for $15,000; that the plaintiff had inspected the lots and property in question before the exchange was consummated; and denied that the value inserted in the Ogden deed was fictitious.

This action was brought to recover damages for fraud and deceit, and the measure of damages relied upon was the difference between the actual value of the several pieces of Ogden property as it was and what it would have been worth had the representations been true. After the plaintiff's attorney had made his opening statement to the jury, and before the trial proceeded, the attorney for the defendant made the following opening statement to the jury: "That we right here and now offer to deed that ranch to Mr. Hecht for the sum of $15,000, when he is asking for a judgment of $85,000, and keeps the Ogden real estate. We right here say now to the gentleman that claims he has been damaged in the sum of

$85,000, that here and now we do in our testimony, and have in our answer, said, 'Take the ranch at $15,000.' Maginnis: I object to his making a statement of that kind to the jury. (Objection overruled. Exception.) Allison: * * * I desire to say in that connection, before the verdict, for fear that it may be replied that the gentleman has not got $15,000 in ready cash, we will give him time on the account for which he can have that ranch. He can pay part in cash and the rest on time. Maginnis: I suppose we have our exception to that statement? Allison: We have the deeds in our possession, and we tender them a deed of that ranch conveying this property to him in the presence of the jury, where he is asking $85,000 damages. We offer to convey that ranch and all the personal property to him for $15,000, and in addition to that— Maginnis: We want this taken down, and note an exception. Court: I don't know what the gentleman means by offering a deed here. Allison: We propose to keep our offer good during the whole trial. Court: I think they have a right to do that. Maginnis: Counsel has no right in the opening statement to get matter before the jury that the court could not admit at another stage of the case. I would like the remarks noted, and take an exception to them. I would like to see those deeds, please. Allison: The name of Mr. Hecht is not in them, but we will have it inserted. Maginnis: This is a deed from Stowe. Allison: We said in our answer that we would convey it or cause it to be conveyed. He has not got a deed back from the gentleman who owns it, and will produce an abstract showing that the gentleman now owns the ranch. Maginnis: He has got a deed signed by Theodore Stowe. I simply call attention to the fact to show how loose this matter is. We don't know who Stowe is, whether his warranty is any good, who he is, or

what he is, whether he is responsible, or whether he is married, or whether his wife joins with him in the deed—Court: It don't make any difference, if you don't accept it. Maginnis: Counsel has no right to make the statement. Counsel is dealing improperly in ' this case. Court: Is it claimed that there was any money paid? Maginnis: No, sir; it was an agreed price. Court: Was there anything else than an exchange? Was there a money consideration? Allison: No, sir. Maginnis: There was personal and real property on our side. Court: No notes and no mortgages? Maginnis: None, except assumed. We desire now an exception to allowing counsel to make this statement. Court: I think the statement may stand. (Exception by plaintiff.)" The appellant now contends that the offer to sell to appellant the Colorado property for $15,000 at the time of the trial, May 10, 1895, and the tender of a deed from respondent's grantee, upon payment of $15,000, in the presence of the jury, and the remarks and order of the court in permitting the offer to stand against his objection and protest, were error.

The price of the Colorado land was fixed and expressed in the contract of sale at $30 per acre, besides the personal property. The price of the Ogden property was not fixed in the contract of sale, but the consideration, as alleged, was stated in the deeds. The answer does not allege any deceit or fraudulent representations on the part of the appellant with reference to the Colorado property. The trial took place about 21 months after the contract was made,—at a time when values may have greatly depreciated. With reference to damages, the case must be tried just as it would have been tried the day after the contract was made, if the question had arisen at that time. The deed tendered was signed by Mr. Stowe, with no assurance of title, and when there

was not time to ascertain whether or not the title was perfect. Who Stowe was, and whether he had a wife or not, does not appear. The offer was not to trade back, but to sell to appellant at a given price, below the price stated in the deed and contract. When the objection was made, the court remarked, "It don't make any difference, if you don't accept it," and permitted the offer to stand. By this remark the court emphasized the propriety of the offer, and from it, if the offer was not accepted, the jury might have inferred without proof that the appellant had placed an exorbitant price upon his land, and was seeking to recover unjust damages at their hands. The appellant may not have had a dollar with which to purchase, even if the price asked was one-quarter its actual value. Or he may have been so impoverished by the results of the trade or otherwise that to accept would not only be to lose his case, but the land besides. To refuse to accept the offer might be used as an argument to the jury that his demand was unjust. If the offer was made in good faith, it proved nothing. It was not a method recognized by the law for proving value. Nor was it competent as tending to show that appellant had lost nothing by the exchange. A party should not be permitted to create testimony in this manner. There is some force in the remarks of counsel for the appellant "that courts of justice are not organized to be turned into market places, where suitors, for the purpose of bluff or otherwise, are expected to enter into a wager on real estate, or any other transaction, in order to maintain a remedy which the law gives for frauds practiced upon them." The appellant could not, under any rule of law, be compelled to buy back his property, although offered to him at less than the market value. The right of damages in such a case is absolute upon the happening of the wrong,

and nothing but the act of the injured party could release it. 1 Sedg. Meas. Dam. (8th Ed.) § 53; *Weld* v. *Reilly*, 48 N. Y. Supr. Ct. 531. The offer was doubtless made as affecting the value of the Colorado property exchanged by the appellant. As before stated, the answer alleges no fraud or deceit on part of the appellant in making this exchange. The value of the Colorado property was stipulated in the contract of sale to be $30 per acre, and the price was carried into the deed of conveyance as the agreed consideration for appellant's Colorado property. This price was so fixed after the respondent had visited the Colorado farm and examined it. The action was brought to recover damages for fraud and deceit on the part of the respondent. We think the offer was not competent for this purpose.

In *Stanhope* v. *Swafford*, (Iowa) 45 N. W. 403, the court held that, " in an action for false representations in an exchange of land, allegations in the answer as to the value of the land traded by plaintiff were properly stricken out when its value was fixed by the written contract between the parties, and that an action for false representations inducing plaintiff to enter into the land trade is distinct from an action on the contract of exchange, and may be maintained, although such representations do not appear in the written contract." In *Matlock* v. *Reppy*, (Ark.) 14 S. W. 546, it is held in a similar case that in an action for false representations as to land, evidence as to the value of the land exchanged by the plaintiff is immaterial when the value was agreed to. In *Drew* v. *Beall*, 62 Ill. 164, in an action brought for fraud and deceit in the exchange of land, the defendant offered to prove the value of the house and lot he received from the plaintiff in exchange, as affecting the question of damages, which the court refused to allow,

and the supreme court held that the proof was properly rejected, and that the plaintiff was entitled to the benefit of his bargain, and it was not for the jury to make a new contract for the parties, or fix a new price on plaintiff's property. The offer made was improper. The ruling thereon was clearly erroneous, and doubtless operated to the disadvantage and injury of the appellant.

On the trial the appellant introduced testimony tending to establish the allegations in his complaint, and, among other things, evidence tending to prove that respondent fraudulently represented that the Twenty-Third street property was producing $4,000 rental per year, and was worth $75,000, when in fact it was renting for about $90 per month, and was not worth more than $17,000; that the Twenty-First street property was represented to be of the value of $16,000, and renting for $240 per year, whereas the value did not exceed $5,000, and it was renting for not over $90 per year; and that the lots in question were not located as represented, did not contain the land as represented, and were partly located in a swamp; that appellant relied upon the representations made as true, and believed them to be true, and made the exchange in reliance thereon; that, had the representations been true, the land in question would have been worth the amount paid for it, but, as it was, the land was not worth over one-third to one-fifth the price paid; that in consideration for this property he gave the respondent the contract and deed of the Colorado land, valued in the contract and deed at $30 per acre, besides a lot of personal property. At the close of the plaintiff's case, the court, on motion of the defendant, struck out all of the testimony of the plaintiff with reference to the false representations and rental of the Twenty-Third and Twenty-First street properties, and confined the proof

to the Central Park annex, and remarked to the jury that "these lots were the only matter involved in the case," and afterwards instructed the jury that they should wholly disregard the testimony with reference to the Twenty-First and Twenty-Third street properties, as to the false representations made concerning them, and the rentals thereof, and further remarked to the jury: "In other words, he cannot complain of the thing he bought when he does not show what he paid for it; in other words, all he would be entitled to under such circumstances would be to recover what he paid, and, as there is no evidence as to what he did pay, there is no question for you to determine in regard to these two pieces of property." The plaintiff excepted to the ruling and charge of the court, and assigns error thereon. Generally, the mere expression of opinion, estimate, or judgment of the value of property, even if false, does not constitute actionable fraud. As a general rule, actionable fraud or misrepresentation consists in a false statement concerning a fact material to the contract, and which is influential in producing it. Mere statements of value, made by a vendor, during negotiations between the parties, although known to be excessive, do not ordinarily constitute either a warranty or a fraud, unless the peculiar relation of confidence and trust existing between the parties is such that the person making the false representations had reason to believe that the other would rely and act upon them. But a willful misrepresentation by a vendor, affirming that the rental from the property sought to be exchanged was greater than in truth it was, is an actionable fraud, and an action will lie against a vendor for falsely representing that a greater rent is paid for the land than is actually received, for that is

a fact peculiarly within the knowledge of the vendor. *De Frees* v. *Carr*, 8 Utah 488. In this case the appellant exchanged the Colorado land, which respondent had examined, at a stipulated price per acre for the properties falsely represented to bring certain annual rentals. Had the income been as represented it would have affected the value of the property obtained by the appellant, and was, therefore, a material representation. In *Griffing* v. *Diller*, (Sup.) 21 N. Y. Supp. 407, the court held that, "although false representations as to value are not alone sufficient to sustain an action for damages suffered in an exchange of lands in reliance on such representations, yet such misrepresentations, in connection with others as to the net revenue derived from the land, are sufficient to support such action, and to entitle plaintiff to recover." In *Wise* v. *Fuller*, 29 N. J. Eq. 257, it is held that the statement that a greater rent is received than is in truth received, or that the income from the property is greater than it is in fact, being matters peculiarly within the knowledge of the vendor, are fraudulent representations, for which an action will lie. This seems to be the general rule, and as adopted in Utah. *De Frees* v. *Carr*, 8 Utah 488; *Speed* v. *Hollingsworth*, 54 Kans. 436; 3 Sedg. Meas. Dam. (8th Ed.) §§ 1027, 1028; 2 Warv. Vend., p. 969, § 10.

The court, in its instruction to the jury, limited the appellant's right of recovery to what he paid, and, notwithstanding the testimony was clear that he gave 2,250 acres of land, valued at $30 per acre, the court held that there was no evidence as to what he did pay, and that he was only entitled to recover what he paid. We are of the opinion that the measure of damages as laid down by the court was erroneous. Sedgwick, in his excellent

work on Measure of Damages (8th Ed., vol. 3, §§ 1027-1029), lays down the general rule of damages in cases of this character as follows: "In such actions, as in actions for fraud in the sale of chattels, it has usually been held that the measure of damages is the difference in value between the land as it would have been if as represented and as it actually was at the time of the sale." Judge Sutherland says: "In case of sales, where there is a fraudulently false representation of quantity, quality, or title, the measure of damages is the difference in value between that which is actual, and that which is represented to exist." 3 Suth. Dam. (1st Ed.) pp. 589-592. In *Drew* v. *Beall*, 62 Ill. 165, the court held that: "In case of an exchange of land, wherein the defendant was fraudulently induced to make the exchange for other property, the plaintiff was entitled to have a tract of land as it was represented to be; and, if he did not get it, the measure of damages was the difference between the actual value of the land and the value of the same if it had been such as it was represented to be." The rule is well established that in an action for fraud and deceit in the sale or exchange of real estate the measure of damages is the difference between the actual value of the land as it would have been if as represented and as it actually was. *Stiles* v. *White*, 11 Metc. (Mass.) 356; *Drew* v. *Beall*, 62 Ill. 164; *Matlock* v. *Reppy*, (Ark.) 14 S. W. 546; *Griffing* v. *Diller*, (Sup.) 21 N. Y. Supp. 407; *Lynch* v. *Trust Co.*, 18 Fed. 486; *Antle* v. *Sexton*, (Ill. Sup.) 27 N. E. 691; *Wright* v. *Roach*, 57 Me. 600; *Herefort* v. *Cramer*, 7 Colo. 483; 3 Sedg. Meas. Dam. §§ 1027–1029; *Page* v. *Wells*, 37 Mich. 415; *Vail* v. *Reynolds*, 118 N. Y. 297; *Stevens* v. *Allen*, 51 Kas. 144; *Krumm* v. *Beach*, 96 N. Y. 399.

We are of the opinion that the court erred in striking out plaintiff's testimony with reference to the fraudulent

misrepresentations of the defendant as to the rentals of the Twenty-First and Twenty-Third street properties, and also in its instruction to the jury on the measure of damages, as applied to thàt property, and in its instruc-. tions to the jury that plaintiff would only be entitled to recover what he paid. In the view taken of the case, we do not consider it necessary to review other assignments of error presented by the record. The judgment of the court below is reversed, with costs, and a new trial granted.

ZANE, C. J., and BARTCH, J., concur.