HENRY HARFST ET AL. v. STATE BANK OF EL CAMPO.

Decided May 15, 1909.

**1.—Notes and Bills—Renewal—Endorser—Fraud—Innocent Holder.**

When the endorser of a promissory note voluntarily renews the same at maturity and thereby obtains an extension of time, with full knowledge that his signature to the original note was obtained by fraud, he can not urge the fraud in the procurement of the original note as a defense in a suit upon the renewal note without alleging and proving that the holder thereof had knowledge of the fraud at the time he bought or acquired the original note.

**2.—Same—Suit before Maturity—Attorney's Fee.**

The fact that suit is filed upon a promissory note before maturity will not prevent a recovery by plaintiff of the attorney's fee stipulated for in the note, when an amended petition is filed after maturity from which it appeared that suit was necessary to collect the note.

Appeal from the District Court of Wharton County. Tried below before Hon. Wells Thompson.

*W. L. Hall,* for appellants.

*Gaines & Corbett* and *Geo. P. Willis,* for appellee.

REESE, ASSOCIATE JUSTICE.—This suit was instituted in the District Court by the State Bank of El Campo against Henry Harfst, Fritz Bender and Emil Kubesch, upon two certain promissory notes for $500 each, with ten percent per annum interest and ten percent additional attorney's fees. Upon trial the court sustained the general demurrer and special exceptions of plaintiff to the defendants' answers and, defendants declining to amend, rendered judgment for plaintiff upon proper proof for principal and interest due on the notes, together with ten percent thereon additional as attorney's fees as provided in the notes. From the judgment defendants appeal.

The assignments of error present the question of the correctness of the ruling of the court in sustaining plaintiff's demurrer and exceptions to the answers of defendants.

The petition alleged the execution by defendants of the two notes for $500 each, one dated July 11, 1907, due October 11, 1907, the other dated July 12, 1907, due November 12, 1907, each providing for ten percent interest from date and ten percent additional as attorney's fees.

Harfst answered, in substance, that he was only surety on the notes, and that they were without consideration, and that the consideration had wholly failed, in this: It is alleged that the notes were given in place of two certain notes of date January —, 1907, executed by one Melcher to plaintiff, upon which the name of Harfst appeared as surety. As to these notes and the execution by him thereof, it is alleged that defendant's signature thereto was procured by the false and fraudulent representations of the said Melcher that the papers were bonds conditioned for the faithful performance by Melcher of the duties required of him as a retail merchant, the said Melcher so falsely reading and interpreting the notes to him, upon which defendant relied, and which representations he believed to be true, and relying upon which, he signed.

Defendant Fritz Bender answered, denying his liability in substantially the same manner, and alleging that the notes were without consideration, that they were given in place of the two notes aforesaid. It was alleged by him that he was uneducated and unable to read and write the English language; that Melcher brought the notes to him and represented that they were for $250 each; that the firm of Kubesch & Bacak had signed the notes and he would procure other solvent sureties, and he, Bender, would be thereby protected from liability, and that trusting to these representations he signed the first two notes.

Emil Kubesch answered, also denying liability on the notes sued on, alleging that they were executed in place of the two notes aforesaid, with respect to which it was alleged that on or about January, 1907, Melcher requested him to sign the firm name of Kubesch & Bacak to two certain promissory notes as sureties for him, Melcher, said notes payable to the State Bank of El Campo in the sum of $500 each, Melcher representing to him that he would procure other solvent and responsible parties to join in the execution of the notes and the said firm

of Kubesch & Bacak would not thereby be bound as sole endorsers or sureties thereon, and that defendant relying upon said representations signed the firm name of Kubesch & Bacak to the notes. It was further alleged that after procuring the signature of Kubesch & Bacak to the notes as aforesaid, Melcher, by false and fraudulent representations, procured Harfst and Bender also to sign the same as sureties; that he was induced to sign by the promise and representations of Melcher that he would procure other *bona fide* sureties, and that he did not know that he had not done so until he was notified on — July, 1907, by the State Bank of El Campo that Harfst and Bender denied their liability on the notes; that when the notes became due, he was requested, persuaded and induced by the bank to sign the notes in suit, the officers of the bank well knowing at the time the manner in which he had been induced to sign the notes.

In each of said answers it is alleged that the officers of the bank knew at the time the notes in suit were executed that the signatures of the sureties to the first notes had been procured by fraud and misrepresentations, and had knowledge of the defenses here set up to said original notes; and it was further set out in the answers of each of the defendants that Melcher procured the $1,000 from the bank at the time of the execution of the original notes, and that Melcher had been declared a bankrupt, and that when the new notes were executed the officers of the bank represented to them that they would thereby be enabled to collect the amount thereof out of the bankrupt estate.

The above is, in substance, the allegations of the answers of the several defendants, which were sworn to, to which a general demurrer and also a special exception, which is nothing more than a general demurrer in substance, were interposed.

We think the general demurrer was properly sustained. It appears from the allegations of the several answers that the defendants trusted entirely to the representations of Melcher in signing the notes, Harfst thinking he was signing some sort of a bond, and Bender that he was signing notes for $250 each. Kubesch signed, trusting to the promise of Melcher that he would procure other solvent sureties, and he seeks immunity on the ground that the signatures of the other sureties, Harfst and Bender, were procured by fraud, and they are therefore not bound. It appears from the answers that Melcher then took the notes to the bank and got the money. This was in January, 1907. No notice or knowledge of any of these facts is charged against the bank until the notes fell due. When the notes fell due the two notes in suit were executed, the time for the payment of the debt being thereby extended, it being averred that at that time, and before the execution of the new notes, the officers of the bank were informed of the fraudulent manner in which the sureties had been induced to sign the first notes. From all that appears in the several answers the bank was innocent of any knowledge of the fraud when they accepted from Melcher the first notes and paid him the money.

Appellants speak of their signatures to the notes as forgeries. As between themselves and an innocent holder they had none of the attributes of forgeries. They intended to sign their names to the papers,

but were deceived and imposed upon by Melcher, whom they trusted as to their contents. This is so as to Harfst and Bender, but Kubesch does not have even this excuse. He signed trusting to Melcher's promise that he would procure, without fraud, other sureties ·to sign.

So.far as appears from the allegations of the answers there were no circumstances to arouse any suspicion on the part of the bank that the notes were not exactly as they were purported to be, or of any fraud in procuring their execution by defendants. The bank took the paper in the usual course of business and in good faith, paying the full consideration at the time. (Wilson v. Deeton, 82 Texas, 531.)

If there be any doubt that the bank would be protected as an innocent holder even in a suit upon the original notes, certainly there can be none that when defendants, with full knowledge and voluntarily, executed the new notes, extending the time for the payment of the debt, they can not be allowed to urge the defenses here set up, without alleging knowledge of the fraud on the part of the bank at the time · it took the original notes and parted with its money.

So far as the notes in suit are concerned defendants stand in no better attitude than if they had voluntarily paid the amount due on the first notes when it was due and were now seeking to recover it back. The execution of the present notes was in effect but a voluntary payment of the first notes.

It was not a case of an illegal consideration vitiating the original contract and any renewal thereof, as in Wegner v. Biering (65 Texas, 509), and that case has no application; nor a case of forgery as in Yakima Valley Bank v. McAllister (1 L. R. A., N. S., 1075). The bank is as innocent as themselves and did not trust Melcher; the. defendants did, and thereby enabled him to impose upon the bank, and must be responsible for the consequences.

There is no merit in the objection that at the time the suit was instituted the second of the notes were not due. After it became due an amended petition was filed, in lieu of the original, which alone is in the record. This did not affect the right to recover full attorney's fees, under the facts of this case, it clearly appearing, as was averred, that suit was necessary to collect the notes.

We find no error in the record and the judgment is affirmed.

*Affirmed.*